IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 3:19CR48 |
| | ) | |
| Plaintiff, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | |
| | ) | |
| DAMON M. JOSEPH, aka | ) | GOVERNMENT'S BENCH |
| ABDULLAH ALI YUSUF | ) | MEMORANDUM REGARDING THE |
| | ) | CLASSIFIED INFORMATION |
| Defendant. | ) | PROCEDURES ACT |

The United States of America, by and through the United States Attorney for the Northern District of Ohio and the undersigned Assistant United States Attorney, files this Bench Memorandum regarding the Classified Information Procedures Act. The government respectfully submits this memorandum of law to apprise the Court of the applicability of the Classified Information Procedures Act, 18 U.S.C. App. 3 ("CIPA"), to matters relating to classified information that may arise in connection with the above-captioned matter, both before and during trial. As in all cases that may implicate classified information, the government herein provides the Court with a detailed description of the procedures mandated by the CIPA statute for protecting such classified information.

## I.      Background

On January 29, 2019, a grand jury returned an indictment charging the defendant with attempting to provide material support or resources to a Foreign Terrorist Organization, namely, the Islamic State of Iraq and al-Sham ("ISIS"), in violation of 18 U.S.C. § 2339B; attempting to

commit a hate crime, in violation of 18 U.S.C. § 249(a); and possession of firearms in furtherance of a crime of violence, to wit, attempt to commit a hate crime, in violation of 18 U.S.C. § 924(c).

On or about September 12, 2018, an FBI undercover employee ("UC-1") observed numerous photographs of knives and firearms on one of the defendant's social media accounts. The photographs included an image originally distributed by Al-Furqan Media, ISIS's media wing, and a photo of the defendant displaying a hand gesture associated with ISIS. UC-1, claiming to be an ISIS organizer, contacted the defendant through one of the defendant's social media accounts. UC-1 asked the defendant if he was a "khalifah," a supporter of ISIS, to which the defendant replied that he supported "the khalifa 100%." Later, the defendant reinforced that he did not "believe in the sugar coated watered down Islam a lot of Muslims of the west follow." UC-1 replied, "so when i asked if you supported the khilafah i was speaking of dawlah, commonly known in the west as ISIS."

On September 18, 2018, UC-1 told the defendant "graphic design" was big with the brothers—meaning ISIS supporters—as it "helps attract new recruits, shows the world the success of dawlah." UC-1 offered to pass along "some of [the defendant's] stuff to one of the brothers to check out." Adding, "No pressure either way." The defendant replied, "Lol doing stuff for my brother's [sic] would give me something exciting to do though" and confirmed, "I know it would be for dawlah." On September 19, 2018, the defendant sent UC-1 a 2 minute and 17 second long video, which included images of ISIS fighters and flags, a photo of Abu Bakr al Baghdadi, the now-deceased leader of ISIS, and statements encouraging others to "Preform [sic] jihad any way you can!" The defendant sent UC-1 three other videos that included images of Anwar Al-Awlaki, the ISIS flag, and similar statements encouraging "Brothers in Islam" to "rise up and fight for our Lord." .

Later, the defendant expressed a desire to extend beyond creating social media and to

support ISIS by waging physical attacks. On September 26, 2018, the defendant told UC-1, "Inshallah one day i can do more than make videos." When asked what he had in mind, the defendant replied, "waging more physical jihad." The defendant said he would stick with what he was good at until the "time comes to do more." On October 30, 2018, while discussing the mass shooting at a Jewish synagogue in Pittsburgh, Pennsylvania, the defendant stated, "My opinion is the Jews are evil and they get what's coming to them . . . I don't feel bad at all considering what they're doing in Palestine. They're the same as the shia in my eyes. All dogs." The defendant noted that "Theres like two synagogues I know of but I don't know any Jews . . . I absolutely despise Jews always have even before being Muslim." He further stated, "I can see myself carrying out this type of operation inshallah," referring to the Pittsburgh attack.

The defendant devised a plan to act on his animus. On December 2, 2018, the defendant sent an ISIS supporter, who was in fact an FBI undercover agent ("UC-2"), a nine-point attack plan the defendant had created. The plan detailed the weapons needed and the procedure for attacking "Jews who support state of israel," with instructions such as, "start attack where most people are gathered."  The defendant told UC-2, "I dont see this as being a martyrdom operation but only Allah swt knows the future." On December 4, 2018, the defendant told UC-1 that while the defendant did not have an exact timeline, he knew of two synagogues and would select his target based on, "Which one will have most people, what time and what day.  Go big or go home."  He stated he wished to obtain two rifles and two pistols for the shooting, that 30 rounds would not be enough, and that he wanted to cause a "massacre."

The defendant recruited another ISIS supporter to assist in his attack plan; this individual was also an undercover FBI agent ("UC-3"). On December 6, 2018, the defendant and UC-3 met in the Toledo, Ohio, area. The defendant provided UC-3 guidance on how to purchase an AR-15 and told UC-3 that while it would be ideal to attack two synagogues, it was probably realistic to

3

only attack one. The defendant wrote the name and address of where the attack was to occur. The defendant further explained that he had done research to determine when the most people would be inside the synagogue and where he would begin his attack. The defendant and UC-3 then drove to the synagogue and drove around the complex. Later in the day, UC-3 sent a photograph to the defendant of rifles laying on the floor. The defendant and UC-3 then discussed the defendant taking possession of the rifles the following day.

On December 7, 2018, the defendant and UC-3 met at a pre-determined location. The defendant obtained from UC-3 two semi-automatic AR-15 type weapons, rendered inoperable by law enforcement, that the defendant believed UC-3 had obtained for the purpose of conducting the mass casualty attack. The defendant was arrested on probable cause while in possession of the weapons. Law enforcement officers provided the defendant constitutional warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1996). The defendant stated he understood those warnings and knowingly and voluntarily waived them. In an oral statement to law enforcement officers, the defendant confirmed his intention to carry out the attack and his desire to cause mass casualties in support of ISIS.

## II.     CIPA Sections and Procedures

CIPA governs the discovery, admissibility, and use of classified information in federal criminal cases. *See United States v. Amawi*, 695 F.3d 457, 468 (6th Cir. 2012); United *States v. Baptista-Rodriquez*, 17 F.3d 1354, 1363 (11th Cir. 1994). The Supreme Court has long acknowledged the importance of protecting the nation's secrets from disclosure. *CIA v. Sims*, 471 U.S. 159, 175 (1985) ("The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service") (internal quotations omitted). Given this compelling interest, federal courts have recognized that "[i]t is not in the national interest for revelation of either the existence or the product of [foreign intelligence operations and information] to extend

4

beyond the narrowest limits compatible with the assurance that no injustice is done to the criminal defendant." *United States v. Lemonakis*, 485 F.2d 941, 963 (D.C. Cir. 1973).

CIPA's fundamental purpose is to "harmonize a defendant's right to obtain and present exculpatory material [at] trial and the Government's right to protect classified material in the national interest." *United States v. Pappas*, 94 F.3d 795, 799 (2nd Cir. 1996) (quoting *United States v. Wilson*, 571 F. Supp. 1422, 1426 (S.D.N.Y. 1983)). By its terms, CIPA "evidence[s] Congress's intent to protect classified information from unnecessary disclosure at any state of a criminal trial" while simultaneously ensuring that the defendant's right to present evidence in his defense is not compromised. *United States v. Apperson*, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006) (quoting *United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002)).

"CIPA was not, however, intended to expand the traditional rules of criminal discovery, under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense." *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990). The statute creates no new rule of evidence regarding admissibility, but rather, the statute mandates procedures accommodating the government's privilege in classified litigation. *See United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989); *see also United States v. Mejia*, 448 F.3d 436, 455 (D.C. Cir. 2006); *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir, 1998); *United States v. Johnson*, 139 F.3d 1359, 1365 (11th Cir. 1998); *Baptista- Rodriquez*, 17 F.3d at 1363-64.

CIPA applies equally to classified testimony and classified documents. *See Kasi v. Angelone*, 200 F. Supp. 2d 585, 596-97 (E.D. Va. 2002) (applying CIPA to classified testimony); *United States v. Lee*, 90 F. Supp. 2d 1324 n.1 (D.N.M. 2000) (citing *United States v. North*, 708 F. Supp. 399, 399-400 (D.D.C. 1988)). Under CIPA, "classified information" includes any information or material that has been determined by the United States Government pursuant to

law or regulation to require protection against unauthorized disclosure for reasons of national security. *See* 18 U.S.C. App. 3 Section 1(a). "National security" means the national defense and foreign relations of the United States. *Id.* at 1(b).

### A.  Pretrial Conference – Section 2

Section 2 of CIPA provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution." 18 U.S.C. App. 3 Section 2. After filing such a motion, Section 2 states that the district court "shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by Section 5 of [CIPA], and the initiation of the procedure established by Section 6 of [CIPA]." *Id.*

Pursuant to CIPA, following such motion, the Court shall promptly hold the pretrial conference to establish: (1) the timing of requests for discovery by the defense; (2) the provision of the requisite written pretrial notice to the United States of the defendant's intent to disclose classified information, pursuant to Section 5 of CIPA; and (3) the initiation of hearings concerning the use, relevance and admissibility of classified information pursuant to Section 6 of CIPA. *Id.* In addition, the Court may consider any matters that relate to classified information or that may promote a fair and expeditious trial. *Id.* No substantive issues concerning the use of classified information are to be decided in a Section 2 pretrial conference. *See* S. Rep. No. 96-823, at 5-6, *reprinted in* 1980 U.S.C.C.A.N. 4294, 4298-99 (96th Cong. 2d Sess.).

To foster open discussions at the pretrial conference, Section 2 provides that no admission made by the defendant or his attorney at the pretrial conference may be used against the defendant unless the admission is in writing and signed by both the defendant and his attorney. 18 U.S.C. App. 3 Section 2.

### B. Protective Orders – Section 3

CIPA § 3 requires the district court issue a protective order upon motion by the United States to protect against the disclosure of any classified information the Government may disclose to a defendant. Section 3 was intended "to codify the well-established practice, based on the inherent authority of federal courts, to issue protective orders," *Pappas*, 94 F.3d at 801, as well as to supplement the district court's authority under Rule 16(d)(1) to issue protective orders in connection with the discovery process. In contrast to Rule 16(d)(1)'s discretionary authority, Section 3 "makes it clear that protective orders are to be issued, if requested, whenever the government disclosed classified information in connection with a prosecution, e.g. *Brady* and Jencks material." *Id.*

### C. Protection of Classified Information During Discovery – Section 4

Both CIPA § 4 and Rule 16(d)(1) of the Federal Rules of Criminal Procedure expressly authorize the United States to submit *ex parte* motions seeking an *in camera* review of classified information that may be potentially discoverable in a federal criminal case. CIPA § 4 provides, *inter alia*:

> The court may permit in the United Sates to make a request for [relief from discovery] in the form of a written statement to be inspected *by the court alone*. If the court enters an order granting relief following such an *ex parte* showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

18 U.S.C. App. III 4 (1980) (emphasis added). CIPA § 4 requires no particular showing before the Court may grant a request to proceed *ex parte* and *in camera*. *See United States v. Sarkissian*, 841 F.2d 959, 965-66 (9th Cir. 1998); *United States v. Pringle*, 751 F.2d 419, 427 (1st Cir. 1984), *vacated and remanded on other grounds sub nom. by United States v. McAfee*, 479 U.S. 805 (1986).

7

Rule 16(d)(1) contains a substantially similar provision: "The court may permit a party to show good cause [for relief from discovery] by a written statement that the court will inspect *ex parte*. If relief is granted, the court must preserve the entire text of the party's statement under seal." Fed. R. Crim. P. 16(d)(1) (emphasis added); *see also United States v. Innamorati*, 996 F.2d 456, 487 (1st Cir. 1993) ("[Rule] 16(d)(1) expressly authorizes the court to deny discovery of information sought by a defendant based on an *ex parte* showing by the Government of the need for confidentiality."). *Ex parte*, *in camera* consideration of government motions to deny or restrict discovery under CIPA § 4 have been upheld consistently as proper practice. *See, e.g.*, *United States v. Amawi*, 695 F.3d 457, 472-73 (6th Cir. 2012) ("[E]very court that has considered this issue has held that CIPA permits ex parte hearings); *O'Hara*, 301 F.3d at 568 (district court properly conducted *in camera*, *ex parte*, proceeding to determine whether classified information was discoverable); *Klimavicius-Viloria*, 144 F.3d at 1261 (approving CIPA § 4 *ex parte* hearings); *Sarkissian*, 841 F.2d at 965 (*ex parte* proceedings concerning national security information are appropriate under CIPA § 4); *United States v. Porter*, 701 F.2d 1158, 1162 (6th Cir. 1983).

CIPA § 4 and Rule 16)(d)(1) authorize the Court to deny or otherwise restrict discovery of classified information by the defense. In pertinent part, CIPA § 4 provides that a district court:

> upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove.

18 U.S.C. App. III § 4 (1980). Similarly, the Federal Rules of Criminal Procedure provide, in pertinent part, that a district court "may for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1).

In determining whether to authorize the government to withhold classified materials from

discovery under CIPA § 4, the Sixth Circuit applies the "relevant and helpful" standard set forth by the D.C. Circuit in *Yunis*, 867 F.2d 617. *See. Amawi*, 695 F.3d 457, 469-73 (6th Cir. 2012); *United States v. Hanna*, 661 F.3d 271, 295 (6th Cir. 2011). When interpreting CIPA § 4's statutory requirements, the D.C. Circuit applied the standard in *Roviaro v. United States*, 353 U.S. 53, 77 (1957), concerning the government's privilege to protect the identity of confidential informants. 867 F.2d at 623. The court in *Yunis* identified three factors to consider when determining whether classified information should be withheld. *Id.* First, the information must be relevant. *Id.* Second, the court must determine whether "the assertion of privilege by the government is at least a colorable one." *Id.* Third, discovery requires that the information is in fact relevant and helpful to the accused as "classified information is not discoverable on a mere showing of theoretical relevance." *Id.* (quoting *Roviaro*, 353 U.S. at 60-61). Even if classified information is relevant and helpful, such evidence is not automatically discoverable. *See Roviaro*, 353 U.S. at 62; *cf. El-Mezain*, 664 F.3d at 523 (citing *Roviaro*, 353 U.S. at 60-61) (noting that even when the government properly invokes its privilege, courts must next consider whether the privilege should yield when balancing other interests). Courts must determine whether, on balance, overriding national security concerns outweigh the defendant's need for the information. *Sarkissian*, 841 F.2d at 965; *Pringle*, 751 F.2d at 426-29; *Rahman*, 870 F. Supp. At 52-53.

D. **Classified Information Possessed by the Defendant with Notice of Defendant's Intent to Disclose and Pretrial Evidentiary Rulings – Sections 5 and 6**

Sections 5 and 6 of CIPA apply when a criminal defendant possesses classified information and seeks to disclose such information during the course of a trial or proceeding. *See, e.g.*, *Baptista-Rodriguez*, 17 F.3d at 1363; *Sarkissian*, 841 F.2d at 965-66; *United States v. Collins*, 720 F.2d 1195, 1199 (11th Cir. 1983). There are three critical pretrial steps in the

handling of classified information under CIPA after such information has been provided to the defendant through discovery. First, the defendant must specify in detail the precise classified information he or she reasonably expects to disclose at trial. Second, the Court, upon motion of the government, shall hold a hearing pursuant to Section 6(a) to determine the use, relevance and admissibility of the proposed evidence. Third, following the Section 6(a) hearing and formal findings of admissibility by the Court, the United States may move to substitute an admission of relevant facts or summaries for classified information that the Court rules is admissible.

i.       The requirement to provide notice of disclosure

CIPA § 5(a) requires a defendant who intends to disclose (or cause the disclosure of) classified information to provide timely pretrial written notice of his or her intention to the Court and the government. Such notice must "include a brief description of the classified information," and such notice "must be particularized, setting forth specifically the classified information which the defendant reasonably believes to be necessary to his defense." *Collins*, 720 F.2d at 1199-1200; *see also United States v. Giffen*, 473 F.3d 30, 33 (2d Cir. 2006); *Yunis*, 867 F.2d at 623 ("a defendant seeking classified information … is entitled only to information that is at least 'helpful to the defense of [the] accused'"); *United States v. Smith*, 780 F.2d 1102, 1005 (4th Cir. 1985) (en banc).

If a defendant fails to provide a sufficiently detailed notice far enough in advance of trial to permit the implementation of CIPA procedures, Section 5(b) authorizes the Court to preclude disclosure of the classified information. *See United States v. Badia*, 827 F.2d 1458, 1464-66 (11th Cir. 1987) (upholding preclusion of disclosure of classified information at trial because defendant failed to comply with notice requirements of CIPA Section 5); *United States v. Hashmi*, 621 F. Supp. 2d 76, 81 (S.D.N.Y. 2008). Similarly, if the defendant attempts to disclose

10

at trial classified information which is not described in his Section 5(a) notice, preclusion is the appropriate remedy under Section 5(b) of CIPA.  *See Smith*, 780 F.2d at 1105 ("defendant is forbidden from disclosing any such information absent the giving of notice").

Thus, Section 5 requires the defendant to provide timely written notice to the Court and the government describing any classified information that he reasonably expects to disclose. *See* 18 U.S.C. App. 3 Section 5(a). Notification must take place "within the time specified by the court, or where no time is specified, within thirty days prior to trial." *Id.* Section 5 specifically prohibits the defendant from disclosing any classified information in a trial or pretrial proceeding until such notice has been given, the government has had the opportunity to seek a determination pursuant to Section 6, and any appeal by the government under Section 7 has been decided or the time for filing an appeal has expired. 18 U.S.C. App. 3 Section 5(a).

ii.      The Pretrial Hearing on Disclosure

Prior to trial, pursuant to Section 6(a) of CIPA, upon motion of the government, the Court must hold a hearing "to make all determinations concerning the use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding."  18 U.S.C. App. 3 Section 6(a).  The statute expressly provides that if the Section 6(a) motion is filed before trial or the relevant pretrial proceeding, "the court shall rule [on the use, relevance, or admissibility of the classified information at issue] prior to the commencement of the relevant proceeding." *Id.* (emphasis added).

Section 6(b) of CIPA requires that before any hearing is conducted under subsection (a), the United States must notify the defendant of the hearing and identify the classified information which will be at issue. If the information was not previously made available to the defendant, the United States may, with the Court's approval, provide a generic description of the material to the defendant. Thus, as Congress recognized in enacting CIPA, "the Government would not

11

have to disclose the identity of an undercover intelligence agent not previously disclosed to the defendant; instead, the Government would describe the information as 'the identity of an undercover intelligence agent' if this meets with court approval." S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4301 (1980).

At the Section 6(a) hearing, the Court hears the defense proffer and the arguments of counsel, then rules whether the classified information identified by the defense is relevant under Rule 401 of the Federal Rules of Evidence.[1] *See Giffen*, 473 F.3d at 33; *Smith*, 780 F.2d at 1106. Courts must also determine whether the evidence is cumulative, "prejudicial, confusing, or misleading," so that even if relevant, such evidence should be excluded under Rule 403 of the Federal Rules of Evidence. *Wilson*, 750 F.2d at 9. At the conclusion of the Section 6(a) hearing, the Court must state in writing the reasons for its determination as to each item of classified information.

### iii.    Substitution in Lieu of Disclosure

In the event that the Court rules that one or more items of classified information are admissible, the United States has the option of proposing a "substitution" for the classified information at issue, pursuant to Section 6(c) of CIPA. 18 U.S.C. App. 3 Section 6(c). The United States may move for permission to provide the defense either a substitute statement admitting relevant facts that the classified information would tend to prove, or substitute a summary of the classified information that would otherwise be disclosable. *See Giffen*, 473 F.3d at 33; *Smith*, 780 F.2d at 1105. The Court must grant the motion for substitution "if it finds that

---

[1]    CIPA does not change the "generally applicable evidentiary rules of admissibility." *Wilson*, 750 F.2d at 9; *accord Yunis*, 867 F.2d at 623. Rather, CIPA alters the timing of rulings concerning admissibility, so as to require them to be made before trial. *United States v. Poindexter*, 698 F. Supp. 316, 318 (D.D.C. 1988); *accord United States v. Smith*, 780 F.2d at 1106.

12

the admission or summary will leave the defendant in substantially the same position as would disclosure." *United States v. North*, 910 F.2d 843, 899 (D.C. Cir. 1990).

If the Court determines that the item of classified information at issue is relevant and admissible and denies the government's motion for substitution, CIPA § 6(e)(1) permits the government to object to the classified information's disclosure. In such cases, the Court shall "order that the defendant not disclose or cause the disclosure of such information." *Id.* Section 6(e) then sets forth a sliding scale of remedies that the Court may impose in such a case. *Id.* at 6(e).

If, after an in camera hearing, the Court determines that the classified information at issue may not be disclosed or elicited during the proceeding, the record of the hearing must be sealed and preserved for use in the event of an appeal. *Id*. at 6(d). If the Court denies the government's motion for substitution under Section 6(c), CIPA permits the government by affidavit from the Attorney General to object to the disclosure of the classified information at issue. *Id.* at 6(e)(1). Upon filing of the Attorney General's affidavit, the Court shall "order that the defendant not disclose or cause the disclosure of such information," *id.*, and may impose a sanction against the government to compensate for the defendant's inability to present proof of the specific item of classified information. *See* S. Rep. 96-823 at 9, 1980 U.S.C.C.A.N. at 4302-3. Section 6(e)(2) provides a sliding scale of possible sanctions, which include dismissal of specific counts, finding against the government on an issue to which the classified information related, striking or precluding testimony of a witness, or dismissing the indictment. 18 U.S.C. App. 3, Section 6(e)(2). An order imposing a sanction shall not take effect until the government has the opportunity to appeal the order under Section 7 and thereafter to withdraw its objection to the disclosure of the information.  *Id.*

Whenever the Court rules classified information admissible pursuant to a Section 6(a)

13

hearing, the Court is instructed to require the government, "unless the interests of fairness do not so require," to provide the defendant with the information it expects to use to rebut the classified information. *Id.* at 6(f). The Court may place the United States under a continuing duty to disclose rebuttal information. *Id.* If the government fails to comply, the Court may exclude the rebuttal evidence and prohibit the examination by the United States of any witness with respect to such information. *Id.*

### E. Other Relevant CIPA Procedures

#### i. Interlocutory Appeal – Section 7

Section 7 permits the United States to take an interlocutory expedited appeal to the appellate court if the district court: (a) authorizes the disclosure of classified information; (b) imposes sanctions for nondisclosure of classified information; or (c) refuses to use a protective order sought by the United States to prevent the disclosure of classified information. *Id.* at 7. If an appeal is taken, trial shall not commence, or must be adjourned if already commenced, until the appeal is resolved. *Id.* Such an appeal and decision does not affect the defendant's right to lodge a subsequent appeal upon conviction of an adverse ruling by the trial court. *Id.* at 7(b).

#### ii. Procedures Governing the Introduction of Classified Information at Trial or at Pretrial Proceeding – Section 8

Section 8 prescribes additional protections and procedures governing the introduction of classified information into evidence. Specifically, Section 8(a) provides that classified documents may be admitted into evidence without changing their classification status. This provision allows the classifying agency, upon completion of the trial, to decide whether information has been so compromised that it could no longer be regarded as classified. *See* S. Rep. No. 96-823 at 10, 1980 U.S.C.C.A.N. at 4304.

In order to prevent "unnecessary disclosure" of classified information, Section 8(b)

14

permits the Court to order admission into evidence of only a part of a writing, recording or photograph. Alternatively, the Court may order into evidence the entire writing, recording or photograph with all or part of the classified information contained therein excised. Excision of such classified information may not be authorized, however, if fairness requires that the whole document, recording or photograph be considered.

Last, Section 8(c) provides a procedure to address the problem presented at a proceeding when the defendant's counsel asks a question or embarks on a line of inquiry that would require the witness to disclose classified information. *Id.* at 11, 1980 U.S.C.C.A.N. at 4304. Specifically, under Section 8(c), the government may object to any question or line of inquiry that may require the witness to disclose classified information that was not previously held to be admissible. 18 U.S.C. App. 3 Section 8(c). Following an objection, the Court shall take suitable action to determine whether the response is admissible "as will safeguard against the compromise of any classified information." *Id.* In effect, this procedure supplements the notice provision under Section 5 and the hearing provision in Section 6(a) to cope with situations that cannot be handled effectively by those sections, such as where the defense counsel does not realize that the answer to a given question will reveal classified information. S. Rep. No. 96-823 at 11, 1980 U.S.C.C.A.N. at 4304-5.

### iii. Security Procedures – Section 9

Section 9 requires the Chief Justice of the United States, in consultation with executive branch officials, to prescribe rules establishing procedures to protect classified information in the custody of federal courts from unauthorized disclosure. 18 U.S.C. App. 3 Section 9(a). The Security Procedures established by former Chief Justice Burger pursuant to this provision will be discussed in the government's Motion for a Protective Order Pursuant to Section 3 of CIPA. The security procedures themselves are codified directly following Section 9 of CIPA.

15

iv.    Coordination Requirement – Section 9A

Section 9A requires an official of the Department of Justice and the appropriate United States Attorney to provide timely briefings of the fact and status of a prosecution involving classified information to a senior official of the agency in which the classified information originated. *Id.* at 9A(a).

v.    Identification of Information Related to National Defense – Section 10

This Section applies in espionage or criminal prosecutions in which the Government must prove as an element of the crime charged that certain material relates to the national defense or constitutes classified information. *See* S. Rep. 96-823 at 11-12, 1980 U.S.C.C.A.N. at 4305. In such a circumstance, Section 10 requires the government to inform the defendant of which portions of the material it reasonably expects to rely upon to prove the national defense or classified information element of the crime. 18 U.S.C. App. 3 Section 10.

vi.    Miscellaneous Provisions – Sections 11-15

The remaining sections of CIPA contain various housekeeping provisions. Section 11 provides for amendments to Sections 1 through 10 of CIPA. Section 12 requires the Attorney General to issue guidelines regarding the exercise of prosecutorial discretion over cases in which classified information may be revealed and requires preparation of written findings when prosecution of such cases is declined. Section 13 requires the Attorney General periodically to report such declination decisions to Congress and, where necessary, to report on the operation and effectiveness of CIPA. Section 14 identifies the senior officials to whom the functions and duties of the Attorney General under CIPA may be delegated. Last, Section 15 provides the effective date of CIPA.

## III.     APPLICATION TO THE INSTANT CASE

In the instant case, classified material exists that will be subject to the CIPA procedure previously outlined as well as other applicable rules, statutes, and/or case law. While CIPA has generally been outlined above, the government notes for the Court that some or many of the aforementioned CIPA sections may not be invoked or need to be addressed in this case.  Further, dependent upon future events and potential pre-trial resolutions and proceedings, there may not be a need for hearings pursuant to various CIPA sections.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:     /s/ Alexandra Hughes
Alexandra Hughes (DC: 1531596)
Trial Attorney
Counterterrorism Section
National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
202-514-9866
202-514-8714 (facsimile)
Alexandra.Hughes@usdoj.gov