UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

Court Minutes and Order

DATE:           October 16, 2019
JUDGE:          Pamela Pepper
CASE NO:        2016-cr-21
CASE NAME:  United States of America v. Samy Hamzeh
NATURE OF HEARING:        Status conference
APPEARANCES:              Benjamin Taibleson – Attorney for the government
                          Adam Ptashkin – Attorney for the government
                          Craig Albee – Attorney for the defendant
                          Joseph Bugni – Attorney for the defendant
COURT REPORTER:          Thomas Malkiewicz
COURTROOM DEPUTY:        Kristine Wrobel
TIME:                     3:03 p.m. – 4:00 p.m.; 4:18 p.m. – 4:28 p.m.

The court noted that it scheduled this hearing to tie up any loose ends before the trial scheduled to begin on October 21, 2019.

The court recounted that at the final pretrial conference, the parties had expressed the hope that they could enter into a stipulation with regard to the defendant's motion *in limine* No. VIII at docket number 277-VIII, regarding the translations of recorded conversations. Counsel for the defendant indicated that the parties had reached a rough agreement, and that counsel hoped to file a stipulation tomorrow.

The court indicated that it was working on the opening instructions and would try to have a draft on the docket shortly. The court noted that earlier that day, it had issued a ruling on the government's requests to admit certain recorded conversations (the order is at Dkt. No. 342), but that there were a few conversations it had not addressed because the defendant had not indicated whether he objected to those conversations.

The court noted that it owed the parties a ruling on the conversations that the defense wanted to admit. Defense counsel indicated that given the court's ruling today on the government's requested submission, the defense should be able to pare down its request. He indicated that he would get the court the pared-down request by tomorrow.

The court addressed the jury questionnaires, opining that there was a group of potential jurors who'd indicated that they couldn't serve due to health issues or conflicts and another group that had expressed biases. The court asked the parties whether they might be able to agree that some of the potential jurors need not appear for trial. The parties agreed with the court that some potential jurors need not appear. The court asked the parties to let the court know of any potential jurors whom they agreed need not appear, and the court would ask the jury coordinator to relieve those people.

1

The court turned to the *voir dire* process, asking the parties whether it could confine in-person *voir dire* to follow-up questions from the answers on the questionnaires. Counsel for the government reminded the court that it had agreed to allow counsel to conduct follow-up questioning, and reiterated the government's request from the pretrial conference that the court approve questions before counsel asks them. Counsel for the defendant proposed that the parties question certain potential jurors in chambers to avoid having their answers influence the other potential jurors. The court agreed. As to other follow-up, defense counsel asserted that there was no need for the court to vet questions, because counsel all knew how *voir dire* worked and there should be no concern about counsel straying too far afield. The court indicated that perhaps it could take a break after the in-chambers questioning and discuss with counsel the kinds of follow-up questions they'd like to ask of the full venire.

The court indicated it had reviewed the government's motion for a protective order pertaining to the testimony of the undercover employees at trial. The court advised the parties that it was firmly and completely convinced that there was reason and good cause for the request. The court opined that the government had not asked to close the courtroom; it had asked to have people from the gallery sit in a remote room and view the testimony by closed-circuit camera. The closed-circuit cameras would be trained on the court or the lawyers and not on the undercover employees during their testimony, but otherwise, the public would be able to see and hear the trial. The court indicated that if the defense was worried about the jury wondering why the audience had left the courtroom during the employees' testimony, the court could give a limiting instruction. The court indicated, however, that the government had asked the court to prohibit defense counsel from asking certain questions, including questions about the employees' training. The court stated that it thought questions about whether the employees had been trained in entrapment and how to avoid it might be relevant. Counsel for the government indicated that he needed to speak with the FBI's general counsel about whether such questions would raise concerns such that the employees could not testify. The court asked the prosecutor to make that inquiry. The court also confirmed with counsel for the government that the employees' only involvement in the case was their undercover activity selling the prohibited items to the defendant on January 25, 2016.

The court addressed the defendant's sixth motion *in limine* regarding the defendant's post-arrest statements. The court stated that it would try to resolve that motion as soon as possible; counsel for the government asked the court to resolve it before the trial began. The court said that it would make every effort.

The court noted that although defense counsel had told court staff a day or so ago that the defense did not anticipate filing any other substantive motions, he'd since filed a notice anticipating several possible motions. First, the defendant had stated that "if" Steve did not testify, the defense would have a motion to exclude his statements. The court stated that it had been under the impression that Steve would not be testifying because of his location. Counsel for the government indicated that nothing had changed and that Steve would not be testifying at the trial. The court indicated that it wanted to confirm that fact, so that the defense could file whatever motion it might file sooner rather than later.

Second, the defendant's notice indicated that he intended to file a trial brief. The court asked what that brief would entail. Counsel for the defendant responded that the brief would be short, and that it would flag certain evidentiary issues to avoid frequent side bars during trial.

Third, the defendant had indicated that he wanted to propose a theory-of-the-defense jury instruction. The court proposed to take up that instruction at the jury instruction conference, after seeing how the evidence came in.

The court indicated that the parties differed on the proposed jury instructions that they wanted the court to give the jury. The court asked if there were any particular jury instructions that needed to be addressed before trial. Counsel for the government asked the court to rule on the entrapment instruction. The court responded that it would review the instruction and give the parties a decision shortly.

The prosecutor told the court that the government had reviewed the court's ruling on the government's consolidated motions *in limine* regarding the defendant's recorded statements, and was considering whether to appeal that ruling. He explained, however, that the government needed leave from the Solicitor General to appeal, and that the approval process took time. The government asked the court for a two-day adjournment (for trial to start Wednesday morning).

Counsel for the defendant stated that he had received the marked exhibits of the transcripts from the government today and needed time to work through them in light of the court's ruling earlier today. Counsel expressed concern about whether the parties could be ready for trial by Monday, or even Wednesday. The court noted that the government was requesting an adjournment solely to seek leave to appeal the court's ruling from earlier today, while it sounded as though defense counsel might be proposing a longer adjournment. Defense counsel asked for a few moments, and the court took a short recess.

After the recess, counsel for the defendant indicated that the defense did not object to the government's request to adjourn the trial until Wednesday. Counsel noted that there may be some issues with witnesses being called out of order, but the parties would deal with those issues. Counsel for the government clarified that he could not be sure he would know by Wednesday if he had the authority to appeal the court's decision but expressed confidence that if the court stated the trial on Wednesday, the parties could finish in the eight days allotted. The court advised the parties that it was scheduled to start another criminal trial on November 4, so if the trial didn't conclude on November 1, there would be a problem. The parties said they understood.

The court granted the government's oral motion to adjourn the trial to Wednesday, October 23, 2019 and stated that it would ask the jury coordinator to inform the jury pool about the change in the start date.

The court **GRANTS** the government's motion for a protective order pertaining to the testimony of the undercover employees at trial. Dkt. No. 313.

Dated in Milwaukee, Wisconsin this 16th day of October, 2019.

BY THE COURT:

_____

HON. PAMELA PEPPER
United States District Judge

4